UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Charles Chandler,                :
                                 :
          Plaintiff,             :
                                 :
     v.                          :   Case No. 2:11-cv-167
                                 :
Karen Carroll, Richard           :
Carroll, David Howard,           :
Williams Sorrell, Tracy          :
Shriver, Andrew Pallito,         :
Phillip Damone, Gary             :
Stevens, William Lundgren,       :
                                 :
          Defendants.            :

<u>OPINION AND ORDER</u>
(Docs. 25 and 27)

     Plaintiff Charles Chandler, proceeding *pro se*, brings
this action claiming that Vermont officials, including state
court judges, prosecutors, and Department of Corrections
("DOC") personnel, violated his constitutional rights.
Several claims and defendants have been dismissed.
Remaining in the case are Chandler's allegations  of
mistreatment while in DOC custody.  Those allegations are
brought against Defendants Andrew Pallito, William Lundgren,
Gary Stevens, and Phillip Damone ("Defendants").

     Defendants now move for summary judgment on the
remaining claims.  Also before the Court is Chandler's
motion to compel discovery.  For the reasons set forth

below, the motion to compel is DENIED, the motion for summary judgment is GRANTED, and this case is DISMISSED.

<u>Factual Background</u>

Chandler was incarcerated at the Southern State Correctional Facility ("SSCF") between March 30 and April 12, 2010, and again between March 16 and March 31, 2011. Chandler's pending claims arise out of his incarceration in 2011.  The Complaint alleges that Chandler was initially placed in an eight by ten foot cell with seven other inmates.  The cell had only one toilet, and Chandler was allegedly forced to sleep on the concrete floor.  Chandler claims that he was subsequently "locked in a cell with no heat, a broken window and left there to freeze to death" at the direction of DOC Commissioner Pallito.  (Doc. 1 at 10.) He further alleges that he was denied adequate medical and dental care; was forced to endure "starvation and [a] reduced calorie diet"; was not allowed "any shaving device for almost 10 days"; was initially denied access to a telephone; caught a cold; and lost seventeen pounds.  *Id*. at 11.

At summary judgment, Defendants respond to Chandler's allegations with a series of affidavits.  The most

comprehensive of these is the affidavit of Joshua
Rutherford, Security and Operations Supervisor at SSCF.
Rutherford avers that Chandler was never placed in a cell
with a broken window or lacking heat.  For support, he cites
routine cell inspections and records of prisoner complaints
during those time periods, none of which reportedly reveal
problems with either the windows or the heating.

With respect to Chandler's claims of overcrowding,
Rutherford contends that the claims are false, and in
particular, that no one at SSCF is required to sleep on the
concrete floor.  Rutherford explains that "[t]here are 2
large holding cells in Admissions at SSCF, in which inmates
might have their mattresses on the floor, but all inmates
are issued a mattress on which to sleep."  (Doc. 25-2 at 1.)
The Rutherford affidavit states that during each of
Chandler's two detentions, he was moved from Admissions one
day after he arrived at SSCF, and placed into a cell with no
more than two other inmates and a bunk for each inmate.
Rutherford also attests that there are no records of
Chandler ever requesting medical or dental treatment.

Defendants' remaining factual statements focus on their
personal involvement – or lack thereof – in the alleged

wrongdoing.  Rutherford, who is not a party, attests that
"[n]one of the Defendants in this lawsuit were involved with
Chandler's placement at SSCF.  Field staff, including
[Defendants] Phillip Damone, Gary Stevens and William
Lundgren, have no input on placement after an inmate is
lodged."  *Id.* at 2.  Rutherford further submits that "the
Commissioner has no direct input on placement (and did not
have any input in this instance.)  Placement is handled
entirely by local staff at SSCF."  *Id.* (ellipsis in
original).  In addition, Pallito, Damone, Stevens and
Lundgren have submitted their own affidavits, in which they
each state that: they do not work at SSCF; they did not
discuss Chandler's placement at SSCF with anyone; they had
no personal involvement in Chandler's unit assignment at
SSCF; they were not aware of Chandler ever complaining about
the conditions of his confinement; they do not know whether
the conditions of which Chandler complains actually existed;
and they were never aware of any risk of harm to Chandler's
health or safety.  (Docs. 25-3, 25-4, 25-2, and 25-6).

    In response to Defendants' motion and supporting
affidavits, Chandler has submitted his own affidavit.  With
respect to the heat in his cell, Chandler contends that SSCF

4

records must show "they were there working on the furnaces while plaintiff was incarcerated in the F unit between March 16, 2011 and March 31, 2011." (Doc. 26-2 at 2.) He also asserts that segregation cells in F unit "did not have heat in the cells. Their intake of air comes near the toilet and the units have broken [w]indows that leak air from the outside into prisoner[']s cells." *Id.* Chandler claims that when other inmates complained about the cold they were moved to heated cells, but that when he complained he was "laughed at" and forced to remain. *Id.* When Chandler tried to cover the window frame with plastic, DOC guards allegedly took the plastic down and told him that he was being targeted for "'special treatment.'" *Id.*

Chandler also responds directly to the Rutherford affidavit. Although he concedes that there were five or six mattresses in the Admissions cells, he describes them as "filthy." *Id.* He also claims that the cell was too small for the number of people being housed there. There is a dispute about the amount of time Chandler spent in this larger cell, as Chandler maintains that he was in the cell for three days, and not merely overnight as reported by Rutherford.

Chandler further states that he complained repeatedly about his conditions "both verbally and in writing," although "on at least one occasion" he saw a guard throw his written complaint into the trash. *Id.* at 2-3. He contends that he also complained about being ill, but that a guard told him it would take two weeks for his medical request to be addressed, and that "'by then you'll be out [of] here, though I think your medical care can wait two weeks [so] you can get it when you leave.'" *Id.* at 3.

Chandler has also submitted the affidavit of Faye Ainsworth, who describes herself as a "close family member to the plaintiff in this case." (Doc. 27-1 at 1.) Ainsworth states that Chandler was in "very good" health when he was first incarcerated in 2011, but that his health was "very poor" when released two weeks later. *Id.* at 1-2. Chandler reportedly asked her for Advil upon his release, which she was able provide. She also gave him soup, and attests that it took Chandler several days of rest before he "had any strength to do anything." *Id.* at 2. Ainsworth further states that she accompanied Chandler when he traveled to the DOC's main office to complain to Commissioner Pallito, and that she has "seen many of the

written complaints Charles has mailed to various people in this matter." *Id.*

Chandler asserts that the "special treatment" he received while at SSCF was directed by the four Defendants. He first claims that Stevens, Lundgren, and Damone wrote a biased pre-sentence report for the Windham County District Court that left the judge no choice but to place Chandler in prison. He also alleges that Stevens, Damone, and Lundgren told probationers to avoid him, and warned Chandler himself that he would be receiving "special treatment" when he reported to SSCF in 2011, and called SSCF to "insist" that Chandler be treated poorly. (Doc. 26-2 at 5.) With respect to Commissioner Pallito, Chandler claims that Pallito told him over the telephone: "[i]f they say they'll give you special treatment I'll make sure of it." *Id.* at 6.

Discussion

I.  <u>Chandler's Motion to Compel</u>

Within his opposition memorandum, Chandler contends that summary judgment at this time would be premature because Defendants have not provided full responses to his discovery requests. Specifically, he claims that medical records and video and audio tapes from SSCF have not been

7

produced.  However, he also contends that some of these items, such as his written complaints and the facility's videotapes, have been erased or destroyed.  Because Chandler is seeking a Court order compelling further production, the Court construes this portion of his opposition memorandum (Doc. 27) as a motion to compel.

The motion to compel is accompanied by three documents, one of which is entitled "Requests to Produce."  (Doc. 26-3 at 3.)  The request seeks copies of Chandler's "Administrative Records and Medical Records," as well as "Audio and Video records for the times that Plaintiff was incarcerated at" SSCF.  *Id.*  The request does not include a certificate of service, and none was ever filed with the Court.  Defendants' counsel reports that he never received this request.

Chandler has also filed a letter allegedly sent to Defendants' counsel on May 30, 2012, in which he states: "As per your email I requested the Medical files and Admin. File in writing.  I still haven't received them from you.  If you don't send them to me ASAP I will be left with no other choice but to ask the court to enforce its discovery order." *Id.* at 2.  Defendants' counsel again reports that he never

8

received this document, and notes that Chandler failed to move to compel prior to the November 15, 2012 filing deadline set forth in the Court's discovery order (Doc. 19 at 2).

As Defendants' counsel properly notes, the motion to compel is untimely.  In any event, Chandler appears to be requesting materials that are largely non-existent.  He has asked for medical records, but states in his filings that he was never given access to medical personnel.  Furthermore, counsel attests that "there are no audio or video records of Chandler's 2011 incarceration."  (Doc. 29 at 2.)

Parties are "only required to produce documents that exist; [they] have no obligation to create documents to support [their adversary's] theory of the case." *Barton Grp., Inc. v. NCR Corp.*, 2009 WL 6509348, at *1 (S.D.N.Y. July 22, 2009); *see also Ross v. McCoy*, 2001 WL 30451, at *5 (S.D.N.Y. Jan. 10, 2001) ("The state is under no obligation to produce evidence that did not exist."); *Alexander v. FBI*, 194 F.R.D. 305, 310 (D.D.C. 2000) (FBI not required to produce list that did not exist).  Here, several of the requested documents and materials do not exist, and thus production cannot be compelled.  The remaining requested

9

items, including administrative records, were reportedly
produced in Defendants' initial disclosures.  The motion to
compel (Doc. 27) is therefore DENIED.

II.  <u>Defendants' Motion for Summary Judgment</u>

     The Court next turns to Defendants' motion for summary
judgment.  Summary judgment is appropriate when, construing
the evidence in the light most favorable to the non-moving
party, "there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a).  A fact is "material" for these
purposes when it "might affect the outcome of the suit under
the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477
U.S. 242, 248 (1986).  An issue is "genuine" if "the
evidence is such that a reasonable jury could return a
verdict for the nonmoving party."  *Id.*

     A.  Personal Involvement

     Defendants first contend that they are entitled to
summary judgment because Chandler has failed to demonstrate
their personal involvement in any of the alleged wrongdoing.
"It is well settled in this Circuit that personal
involvement of defendants in alleged constitutional
deprivations is a prerequisite to an award of damages under

10

§ 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted); *see also Gronkowski v. Spencer*, 424 F.3d 285, 293 (2d Cir. 2005) ("Before § 1983 damages are awarded, a plaintiff must show by a preponderance of the evidence that the defendant was personally involved – that is, he directly participated – in the alleged constitutional deprivations."). Defendants' affidavits state that they had no communications with SSCF regarding Chandler's placement or the conditions of his confinement. Chandler responds that Defendants threatened with him special treatment, and believes – in part because guards at SSCF also used the term "special treatment" – that his subsequent mistreatment was the manifestation of those threats.

The Complaint alleges that after Chandler lodged complaints about Defendants prior to his incarceration, "they called the Springfield Department of [C]orrections and insisted that [DOC personnel] provide the plaintiff with poor care and treatment while he was unlawfully sent there for 30 days." (Doc. 1 at 10.) Chandler also alleges in his Complaint that Commissioner Pallito "ordered that the plaintiff should be locked in a cell with no heat, a broken

11

window and left there to freeze to death." (Doc. 1 at 10.)
Chandler's summary judgment affidavit does not re-assert
this latter claim, instead alleging that Pallito threatened
to enforce the threat of "special treatment" at SSCF. (Doc.
26-2 at 6.)

As noted above, the Court must view the facts at
summary judgment in a light most favorable to Chandler.
Nonetheless, in *Anderson* the Supreme Court held that "[t]he
mere existence of a scintilla of evidence in support of the
plaintiff's position will be insufficient; there must be
evidence on which the jury could reasonably find for the
plaintiff." 477 U.S. at 252. In other words, "the judge
must ask . . . not whether the evidence unmistakably favors
one side or the other but whether a fair-minded jury could
return a verdict for the plaintiff on the evidence
presented." *Id.* Furthermore, although a district court
generally "should not weigh evidence or assess the
credibility of witnesses," *Hayes v. N.Y. City Dep't of
Corr.*, 84 F.3d 614, 619 (2d Cir. 1996), the Second Circuit
has held that

> in the rare circumstance where the plaintiff
> relies almost exclusively on his own testimony,
> much of which is contradictory and incomplete, it
> will be impossible for a district court to

> determine whether 'the jury could reasonably find
> for the plaintiff,' . .. and thus whether there
> are any 'genuine' issues of material fact, without
> making some assessment of the plaintiff's account.

*Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir.
2005) (quoting *Anderson*, 477 U.S. at 252).

It is also well established that "[a] party may not
rely on mere speculation or conjecture as to the true nature
of the facts to overcome a motion for summary judgment," as
"[m]ere conclusory allegations or denials cannot by
themselves create a genuine issue of material fact where
none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159,
166 (2d Cir. 2010) (citation omitted). Only disputes over
material facts — "facts that might affect the outcome of the
suit under the governing law" — will properly preclude the
entry of summary judgment. *Anderson*, 477 U.S. at 248; *see
also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio
Corp.*, 475 U.S. 574, 586 (1986) (stating that the nonmoving
party "must do more than simply show that there is some
metaphysical doubt as to the material facts").

Chandler's claims of personal involvement by Defendants
are largely speculative. Chandler contends that Defendants
threatened him with especially abusive treatment, and that
Pallito himself vowed to ensure Chandler received such

13

treatment.  The only fact connecting these alleged threats to actual mistreatment is the statement by SSCF guards – entered into the record by means of Chandler's affidavit – that they were to "make sure [Chandler] got special treatment."  (Doc. 26-2 at 2.)

Chandler's summary judgment affidavit does not support his initial claim against Pallito, to wit, that the Commissioner ordered him placed in an unheated cell "and left there to freeze to death."  (Doc. 1 at 10.) Furthermore, Chandler's evidence does not demonstrate that Defendants were ever made aware of either his complaints or his requests for medical care.  In fact, Chandler reports that when he tried to submit a written complaint, a guard threw it away.  His efforts to seek medical care were also reportedly thwarted at the guard level.  And to the extent that Chandler ever met with the Commissioner to lodge a complaint, that meeting took place prior to his 2011 incarceration.

Giving Chandler's *pro se* filings the required liberal reading, the Court also considers the possibility of supervisor liability.  Second Circuit precedent provides for supervisor liability not only where the supervisor was

directly involved, but also where he or she was made aware of misconduct and failed to take corrective action. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Liability may also attach where a supervisor created policies or customs that allowed for, or resulted in, unconstitutional practices, or where the supervisor was grossly negligent. *Id.; see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).

Chandler makes no effort to assert a claim of supervisor liability under *Colon*. Again, his claims of direct involvement are based largely upon conjecture, while his complaints of mistreatment never reached the Defendants. Without either direct involvement or notice of alleged constitutional violations, Defendants cannot be held liable as supervisors under *Colon*.[1]

---

[1] In addition to his claim of cruel and unusual punishment, Chandler alleges that he was denied "equal protection of the laws." (Doc. 1 at 18.) In *Iqbal*, the Supreme Court held that where the plaintiff is claiming discrimination (as in an equal protection claim), a supervisor is only liable for his or her direct involvement, and mere knowledge of misconduct by an agent is insufficient. *Iqbal*, 556 U.S. at 677. In other words, after *Iqbal*, not all of the *Colon* factors apply where there is a claim of discrimination. *See Toliver v. N.Y.C. Dep't of Corr.*, 2012 WL 5426658, at *4 (S.D.N.Y. Oct. 10, 2012). Because Chandler's allegations arguably suggest, at most, some level of knowledge by Pallito that his subordinates might act unlawfully, Defendants' personal involvement argument applies with particular force to Chandler's equal protection claim.

In sum, Chandler's claims are too speculative to create genuine issues of material fact for trial. His claims of mistreatment are brought against DOC personnel who are not employed at SSCF, and who have each sworn that they played no role in his placement. The Security and Operations Supervisor at SSCF has corroborated Defendants' statements. In response, Chandler offers a conspiracy theory based upon Defendants' alleged threats as well as vague statements by SSCF guards, all of which are conveyed to the Court solely through Chandler's self-serving affidavit. The Court therefore finds that Chandler has failed to establish any genuine issues of material fact, and that Defendants are entitled to judgment as a matter of law on the issue of personal involvement. *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (a self-serving affidavit which reiterates the complaint's conclusory allegations is insufficient to preclude summary judgment)(citing *Anderson*, 477 U.S. at 249 ("[t]he plaintiff could not rest on his allegations of a conspiracy to get to a jury without any significant probative evidence tending to support the complaint"))). Their motion for summary judgment is therefore GRANTED.

B.   Cruel and Unusual Punishment Claim

Defendants next argue that even assuming personal involvement and/or supervisor liability, Chandler's claims fail to rise to the level of an Eighth Amendment claim.  The Eighth Amendment prohibits cruel and unusual punishment that involves the unnecessary and wanton infliction of pain.  *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).  The Eighth Amendment also imposes a duty on prison officials to ensure that inmates receive adequate food, clothing, shelter and medical care.  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).

Eighth Amendment claims have both an objective and subjective component. *See id.* at 834; *Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011).  Objectively, the alleged deprivation must be sufficiently serious.  *See Farmer*, 511 at 834; *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).  "Subjectively, the official must have acted with the requisite state of mind, the 'equivalent of criminal recklessness.'" *Collazo*, 656 F.3d at 135 (quoting *Hathaway*, 99 F.3d at 553).  The plaintiff must show that the official "knew of and disregarded an excessive risk to [the plaintiff's] health or safety and . . . was both aware of facts from which the inference could be drawn that a

17

substantial risk of serious harm existed, and also drew the inference." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (alterations and quotations omitted).

For purposes of Defendants' summary judgment motion, the court will assume that at least some of Chandler's claims are serious enough to satisfy the first prong. As to the second prong, however, Chandler has not demonstrated a level of knowledge or state of mind sufficient to satisfy the subjective portion of the standard. As discussed above with respect to Defendants' lack of personal involvement, the facts at summary judgment do not establish that Defendants were aware of any risk of either poor prison conditions or danger to Chandler's well-being. Indeed, Defendants' affidavits state unequivocally that they had no knowledge of Chandler's alleged conditions, or of any excessive risk harm to his health or safety. In light of these undisputed declarations, the Court finds that the Defendants are entitled to summary judgment on Chandler's Eighth Amendment claims.

## Conclusion

For the reasons set forth above, Chandler's motion to compel (Doc. 27) is DENIED, Defendants' motion for summary

judgment (Doc. 25) is GRANTED, and this case is DISMISSED.

Dated at Burlington, in the District of Vermont, this 28th day of May, 2013.

/s/ William K. Sessions III
William K. Sessions III
Judge, United States District Court

19